THE PEOPLE OF THE STATE OF NEW YORK *v.* THE SAINT NICHOLAS BANK of New York; HUGH J. GRANT, Receiver, Appellant.

In the Matter of the Claim of DARIUS O. MILLS, Respondent.

1. INSOLVENT CORPORATION — PAYMENT, BY RECEIVER, OF CLAIM FOR RENT TO ACCRUE FOR UNEXPIRED TERM — RE-ENTRY AND RELETTING. If premises leased to a corporation are vacated before the expiration of the term, on the appointment of a receiver in a statutory proceeding for the dissolution of the corporation for insolvency, and the lessor, in accordance with the terms of the lease, re-enters and relets to a third party for the unexpired term, at a less rental, the difference between the rent for the balance of the term reserved under the original lease and that reserved under the subletting constitutes a definitely established claim against the corporation, which the receiver is empowered to recognize.

2. RECEIVER DISTINGUISHED FROM ASSIGNEE. The situation of a receiver of an insolvent corporation is less restricted than that of an

assignee under a general assignment for the benefit of creditors,. whose powers and duty are prescribed by that instrument.

*People* v. *St. Nicholas Bank,* 3 App. Div. 544, affirmed.

(Argued February 1, 1897 ; decided February 9, 1897.)

APPEAL, by certification, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 16, 1896, which affirmed an order of Special Term confirming the report of a referee.

This is a claim presented by Mr. Mills to the receiver of the Saint Nicholas Bank for rent to become due under a lease made to the bank. The following facts will sufficiently show the situation of the parties. The bank was the lessee of Mr. Mills of certain premises, under a lease for a term of five years and at a rent of $12,000 a year. During the term, the bank became insolvent and, in statutory proceedings on behalf of the People for the dissolution of the corporation, Mr. Grant was appointed its receiver. Shortly after his appointment, he vacated the premises; whereupon Mr. Mills re-rented the same, as he might do under the lease, to the German-American Bank, at a rent of $9,000 a year, for three years, being the balance of the term named in the lease to the Saint Nicholas Bank. The claim presented to the receiver was for the difference between the amount of rental reserved under the original lease and the amount reserved in the subletting to the German-American Bank, viz. : a sum of $9,000. The receiver rejected the claim and the same being referred by the court to a referee, he reported in its favor. The order of the court at Special Term confirming the report of the referee was affirmed, upon appeal, by the Appellate Division of the Supreme Court, in the first department, and that court has certified to us the following question of law for our review, viz.: " Whether or not the claimant, D. O. Mills, by re-renting the premises to the German-American Bank, canceled the open subsisting engagement, and substituted a claim for a contingent liability of the bank, which the receiver had no power to recognize."

75

*John M. Bowers* for appellant. The claimant, D. O. Mills, by re-renting the premises to the German-American Bank, canceled the open subsisting engagement, found by the referee to be then existing in his favor, and substituted therefor a claim for a contingent liability, which the receiver had no power to recognize. (*In re Hevenor*, 144 N. Y. 271 ; 3 R. S. art. 8, tit. 4, chap. 8, §§ 70, 82 ; Code Civ. Pro. § 1788 ; *People* v. *N. T. Co.*, 82 N. Y. 287 ; *In re Adams*, 15 Abb. [N. C.] 61 ; *Hull* v. *Gould*, 13 N. Y. 127, 134 ; *Underhill* v. *Collins*, 132 N. Y. 272 ; *Bain* v. *Clark*, 10 Johns. 424 ; *Shepard* v. *Merrill*, 2 Johns. Ch. 276 ; *Morgan* v. *Smith*, 70 N. Y. 537 ; *McKensie* v. *Farrell*, 4 Bosw. 192 ; *Martin* v. *Black*, 9 Paige, 644 ; *Rinn* v. *A. F. Ins. Co.*, 59 N. Y. 143.)

*Henry B. Anderson* for respondent. The reletting by Mr. Mills, after the premises had been vacated by the receiver, did not operate to terminate the lease or the liability of the tenant under his covenant to pay the rent. (*Underhill* v. *Collins*, 132 N. Y. 269.) The liability for the differences between the amount obtained by reletting and the original liability is a liability for rent. (*People* v. *N. T. Co.*, 82 N. Y. 283.) There is no principle of law which cuts off the rights of those whose claims have not matured at the time of the insolvency, or the cash value of which is not determinable until later, from sharing in the assets of an insolvent corporation. (*People* v. *N. T. Co.*, 82 N. Y. 283 ; 3 R. S. art. 3, tit. 4, chap. 8.)

GRAY, J. We think that there is a certain and a well-marked distinction between the present case and that of the *Matter of Hevenor* (144 N. Y. 271). Our decision in the *Hevenor* case rested upon the facts therein disclosed and upon the effect of the deed of assignment in measuring the duties and powers of the assignee of Hevenor's estate. The distinction was correctly apprehended by the learned justice, who wrote the prevailing opinion below, and we should hardly suppose that the learned justice, who wrote in criticism of the *Hevenor* case, could have found reason for his observations, had

he more carefully considered the grounds for our conclusion in that case. The question was whether the assignee of Hevenor cou'd approve and pay the claim of Hevenor's lessor; and that turned upon the terms of the authority conferred by the deed of assignment. That, undoubtedly, directed the assignee to pay all the debts and liabilities of the assignor, then due or to grow due; but, as we endeavored to point out in the opinion, that language did not mean to include a liability thereafter to be created and contingent upon after-occurring events. It meant, and the will of the assignor was, that whatever was a debt at the time of his assignment, or whatever he had rendered himself liable to pay, although the liability had not yet matured into an actual debt, his assignee should meet by the application of the assets in his hands. The difficulty there was that, while Hevenor's lessor might have at once presented a claim for the rental to accrue during the balance of the unexpired term of the lease, upon re-entering, as he might do under the provisions of the lease, by his acts he put an end to Hevenor's fixed obligation and made it uncertain as to whether and when there would be any loss at all, upon which a claim might be based. Whether the lessor would suffer any loss from the subsequent renting of the premises, during the period of the term for which Hevenor had made himself responsible, was contingent and would only be ascertainable in the future. How, then, could it be said that, within the terms of the deed of assignment, which restricted the assignee in the distribution of the assignor's assets to what were then the debts and liabilities of the latter, there was any authority in the assignee to recognize and approve as a claim against the estate a liability which was, in fact, dependent upon the acts of the claimant? Was the distribution of the estate in the hands of the assignee to be kept in suspension indefinitely, to await the result of the acts of Hevenor's lessor — until it could be determined what success would attend his efforts in re-renting the premises? What was observed in our opinion in that case was that it was left for the future to determine whether there would be any claim at all. The liability of the assignor could only have

been for a possible deficiency; which, in the nature of things, and because of what the lessor had done, could only arise subsequently to the assignment.

In the *Matter of Lewis* (81 N. Y. 421), the power of such an assignee was held to be only that which he derived from the deed of assignment. He was said to be empowered to distribute the proceeds of the estate according to the directions and under the sole guidance of the deed of assignment, and that the courts could not direct him to make any payment in violation of its terms. A comparison was made, in the opinion in the *Lewis* case, between what might be done in the case of a general assignment and in the case of a bankrupt's estate, and it was said that, in the latter case, the law dictates the distribution and, by force of direct enactment, the court takes possession of the estate, which the bankrupt is unable to hold; while, in the former case, the right to control the distribution remains in the assignor.

In *Brainerd* v. *Dunning* (30 N. Y. 211), the question was as to the meaning of the provision in a general assignment for the payment of debts, etc., due or to grow due; and it was held that it evidently applied only to claims then in existence and whether due or to grow due was deemed to be immaterial.

It should be clear, as we think, that no discretion is vested in an assignee with respect to the distribution of the estate in his hands and that he must follow closely in doing so the terms of the assignment. There should be no construction of its provisions which would permit the delaying of creditors. The presentation and allowance of a claim by Hevenor's lessor for a certain sum, as due from the lessee upon the cessation of occupation under the lease, would have been unobjectionable as a debt or liability of the assignor and would in no wise have tended to delay the distribution of the assigned estate among the creditors. The liability of the assignor was fixed at the time of the re-entry by the lessor and would have consisted in an indebtedness stated by the lessor, either as the whole amount of rent to accrue during the unexpired term of the lease, or as such lesser amount, as would represent the difference between

the whole amount of the rent thereafter to accrue and the amount of rent reserved in a reletting of the premises for the unexpired term.

In the present case, as it was well observed in the opinion below, the situation of a receiver of an insolvent corporation is quite different from that of an assignee for the benefit of creditors, limited in his authority and power by the terms of the deed of assignment. The receiver is subject to the direction of the court that appointed him and to the provisions of the statutes regulating the distribution of the assets of an insolvent corporation. He is required to make a fair and just distribution of the property of the corporation among its fair and honest creditors. (Code of Civ. Pro. sec. 1793.) He is made a trustee of the insolvent estate for the benefit of the creditors of the corporation and of its stockholders. He is required to give notice to all persons, holding any open or subsisting contract of the corporation, to present the same and provisions are made in the Revised Statutes for the presentation of such claims up to the time of the payment of a second dividend. (2 R. S. 464, part 3, chap. 8, tit. 4.) The whole matter is within the discretion of the court and questions are to be determined upon equitable principles; subject only to what limitations may, possibly, be found in the Revised Statutes. It is quite apparent that greater latitude of judgment and action is contemplated by the provisions of the statutes on the part of a receiver and in the supervisory powers of the court. The conditions are altogether other than those which exist under a deed of assignment for the benefit of creditors. What the lessor, Mills, did in this case was to present as his claim against the estate in the hands of the receiver an indebtedness, which was definite and without any element of contingency. Instead of claiming from the receiver the payment of all the rent which was to accrue during the unexpired term of the lease, Mills only claimed as an indebtedness the precise loss resulting from what he had been able to relet the premises for during the unexpired term. There was no question of a contingent liability, only to be ascertained to be

such by the occurrence of future events. There was, simply, the presentation of a claim for a definite sum, as the loss which the lessor had suffered by the dissolution of the corporation and the consequent termination of the subsisting engagement between it and its lessor. If we concede that the two cases might be regarded as parallel, there is an important and material distinction in such facts; but the concession is unnecessary and the situation of a receiver, placed in possession of the assets of an insolvent corporation by force of the decree of the court and with the broad and equitable powers conferred by the statute, bears little comparison with the situation of an assignee under a general assignment for the benefit of creditors, whose scope of powers and duty is prescribed by that instrument.

The question, therefore, which is certified to us is answered in the negative; and the order appealed from, so far as it is affected by that question, should be affirmed, with costs.

All concur.

Order affirmed.