CECILE SEIDLITZ, Respondent, *v.* MAYER S. AUERBACH and
LEOPOLD WEIL, Appellants, Impleaded with SAMUEL KALEK
and JACOB PRICE, Defendants.

First Department, January 24, 1919.

**Landlord and tenant — lease providing for liquidated damages in
case of tenant's default — lease construed — parties may provide
for liquidated damages.**

Whether an amount named in a lease is to be considered as liquidated
damages or as a penalty is not to be determined by events subsequent
to the making of the lease, but the instrument should be construed in the
light of surrounding circumstances and the apprehension of damages
that existed in the minds of the parties at the time of the lease.

Parties to a contract may agree upon liquidated damages in case of breach
and the courts will enforce it unless the agreement be unlawful, uncon-
scionable or contrary to public policy.

Where a landlord agreed to tear down two buildings and erect a new
building at a large expense, to be used as a moving picture theatre, and
a lease to the plaintiff to run for twenty-one years bound him to pay
taxes, water rates, assessments and other charges and the plaintiff
deposited with his landlord $7,500 as security for the performance of cove-
nants by him made, and it was provided that in the event of a default the
landlord's damages " are hereby fixed and liquidated at the amount of
Seven thousand five hundred Dollars," which amount the landlord shall
retain without deduction or offset whatever, the lease should be construed
to provide for liquidated damages and not for a penalty. Hence the
plaintiff having been evicted for failure to pay rent cannot recover any
part of the moneys deposited.

There is no inconsistency in allowing such covenant to stand as to damages
for failure to pay rent, even though the relation of landlord and tenant
was terminated by summary proceedings.

APPEAL by the defendants, Mayer S. Auerbach and another,
from a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of New York
on the 30th day of March, 1918, upon the verdict of a jury
rendered by direction of the court.

*Daniel P. Hays* of counsel [*Hays, Hershfield & Wolf,*
attorneys], for the appellants.

*Henry M. Flateau,* for the respondent.

PAGE, J.:

The action is to recover the sum of $7,063.25, with interest from January 21, 1917, being the balance of money deposited with the defendants as security under the terms of a lease dated the 3d day of April, 1914, of certain premises in the borough of Manhattan to be used and occupied as a theatre for a term commencing when the building therein provided for was completed, and ending on September 30, 1935, at the yearly rent of $5,500, payable in equal installments monthly in advance, which rent the tenant covenanted and agreed to pay. In addition to said rent, the tenant covenanted and agreed to pay all taxes, duties, assessments (except assessments for local improvements becoming a lien after September 30, 1930), water rents or charges, water meter charges, and governmental impositions, extraordinary as well as ordinary, as shall or may during the term of the lease be levied, charged, assessed, imposed or become a lien upon the demised premises. It is further provided that in the event that the tenant shall not pay any of the taxes and other charges or liens above mentioned when the same shall become due and payable, the landlord may pay the same with all interest or penalties which have accrued, and in case of such payment the tenants will on the next rent day pay to the landlord, in addition to the installment of rent then to become due, a sum equal to the amount which shall have been paid by the landlord, with interest thereon. The landlord agreed to cause to be erected on said premises a one-story theatre building substantially in accordance with plans and specifications therein mentioned, as speedily as possible.

It is further provided that if the tenant shall make any default in fulfilling any of the covenants or conditions of the lease after three days' notice to comply, other than the covenant for the payment of rent or additional rent, or if the premises become vacant or deserted, the landlord may on ten days' notice terminate the lease, which shall thereupon expire as fully and completely as on the date fixed for the expiration of the term, except for the remaining liability which is therein provided, as follows:

" If the tenant shall make default in the payment of the rent reserved hereunder, or any part thereof, or if the notice

last above provided for shall have been given and said ten days' period shall have elapsed, except as above provided, or if the demised premises become vacant or deserted, the landlord, by agents or servants, may immediately, or at any time thereafter, re-enter the demised premises and remove all persons and property therefrom, either by summary dispossess proceedings, or by any suitable action or proceeding at law, or by force or otherwise, without being liable to indictment, prosecution or damages therefor, and at the option of the landlord, the landlord may in such case, relet the demised premises or any part or parts thereof, as the agent of the tenant, and receive the rents therefor, applying the same first to the payment of such expenses as the landlord may have incurred, and then to the fulfillment of the covenants of the tenant herein, and the balance, if any, at the expiration of the term first above provided for, shall be paid to the tenant. In the event of re-entry or of termination of this lease by summary proceedings or otherwise, whether or not the premises be re-let, the tenant shall remain liable until the time when this lease would have expired but for such termination, for the equivalent of the amount of all of the rent and additional rent reserved herein, less the avails of re-letting, if any."

The lease further provides:

" 19. The tenant has paid to the landlord prior to the execution and delivery of this lease, the sum of Seven thousand five hundred dollars as security for the faithful performance by the tenant of all the covenants and agreements herein contained and to indemnify the landlord against loss by reason of any such default; and as the damages which the landlord would sustain in the event of a default by the tenant hereunder would not be susceptible of ascertainment, it is hereby covenanted and agreed between the landlord and tenant that in the event of any such default the damages sustained by the said landlord be and they are hereby fixed and liquidated at the amount of Seven thousand five hundred Dollars in payment of which the landlord shall retain the said sum of Seven thousand five hundred Dollars so deposited as aforesaid, without any deduction or offset whatever; if the tenant shall faithfully perform all of the covenants and agreements herein contained said sum of Seven

thousand five hundred Dollars shall be applied by the landlord on account of the rent last becoming due under the lease."

Upon the premises when this lease was executed were two five-story and cellar private houses. As a part of the agreement to lease, the landlord undertook to tear down these buildings and erect a one-story theatre building with 469 seats adapted for moving pictures and nothing else, and there was expended by the landlord in so doing the sum of $15,000. The tenants entered into possession and continued to occupy them, pay the rent and otherwise observe the covenants of the lease, until March 1, 1917, when they made default in the payment of the sum of $328.34, the rent for one month at the rate to which the rent appears to have been voluntarily reduced by the landlord, and summary proceedings were instituted which resulted in a warrant of dispossess being issued, as result of which the tenant was evicted from the premises on March 14, 1917. The defendants conveyed the premises to a third person on the 14th day of April, 1917, by deed dated on that date, free and clear of all incumbrances. It was proved that the rental value of the premises in March, 1917, was not to exceed $2,500, and that by reason of change of condition the property could not be used profitably as a motion picture theatre. The learned trial justice directed a verdict for the balance of the deposit, deducting therefrom rent from March 1 to April 14, 1917.

While this may appear to be an equitable disposition of the case, it was not in my opinion in accordance with the contract and legal rights of the parties. Whether an amount named in an agreement is to be considered as liquidated damages or as a penalty, is not to be determined by events subsequent to the making of the agreement. (*Dunn* v. *Morgenthau*, 73 App. Div. 147, 149; affd., on opinion below, 175 N. Y. 518.) The agreement must be construed in the light of the surrounding circumstances and the apprehension of damages that existed in the minds of the parties at the time, and whether the engagements of the parties were such that by a breach of the contract damage might result which would be difficult of proof or accurate admeasurement. When these elements appear, I know of no rule of law that prevents parties to a contract providing in advance that a certain sum shall be

established to be the damage flowing from the breach of the contract without further or other proof.

The earlier decisions would scarcely admit that a valid contract could be made providing for liquidated damages. Every such stipulation in a contract was construed to be a penalty and only the actual damage was recoverable. Subsequently the courts became more tolerant of such provisions, and now it has become well settled that it is perfectly competent for the parties to make their own contracts, and unless the agreement be unlawful, unconscionable or contrary to public policy, the courts will enforce it, to carry into effect their intention as expressed in the contract, where the stipulation relates to liquidation of damages, the same as any other contract. (*United States* v. *Bethlehem Steel Co.*, 205 U. S. 105, 119; *Sun Printing & Pub. Assn.* v. *Moore*, 183 id. 642, 660; *Clement* v. *Cash*, 21 N. Y. 253, 257; *Ward* v. *Hudson River Building Co.*, 125 id. 230, 234; *Curtis* v. *Van Bergh*, 161 id. 47; *Mosler Safe Co.* v. *Maiden Lane S. D. Co.*, 199 id. 479, 485.)

The presumption is that the parties intended that this sum of $7,500 was to be retained by the landlord as fixed and liquidated damages in case of a violation of the covenants of the lease or failure to perform on the part of the tenant; for such is their declaration in clear and unmistakable language. The plaintiff now seeks to have the court declare that such was not the intention of the parties. The burden then rested upon him to show that the real intention of the parties was that the sum was intended as a penalty and not as a liquidation of damage, in that the sum was so disproportionately beyond any possible damage that could have resulted from a breach of the contract that the parties could not have intended the sum to be a liquidation but rather as a forfeiture or penalty to enforce obedience to its terms because of fear of undue loss.

Viewed, therefore, in the light of surrounding circumstances at the time the lease was made, in so far as the trial justice allowed them to be shown, we find this condition: A landlord agrees to tear down two buildings and build one, the availability of which is limited to one class of occupancy, and he is to expend on the alteration $15,000. A lease is to be made expiring more than twenty-one years from date.

The tenant is to agree to pay $5,500 a year rent and taxes, water rates, assessments and other charges. If the tenant performs, the landlord has a valuable property. If, however, the character of the neighborhood changes or the motion picture loses its vogue so that it no longer appeals to popular fancy, and the property can no longer be leased for the purpose for which it was designed, and the theatre is thrown back on the hands of the landlord through the tenant's default, he might be required at large expense to alter the building to meet changed conditions, or compelled to allow it to remain unoccupied for a long term of years or, at best, accept a small rent.

When the tenant was dispossessed by summary proceedings the relation of landlord and tenant was terminated, and rent as such could not longer be due. " There is no inconsistency in allowing this covenant to stand as to damages for failure to pay rent, even though the relationship of landlord and tenant was terminated by the summary proceedings, and rent as such could no longer be due." (*Blumberg* v. *Corday*, 160 N. Y. Supp. 613, 615, and cases cited; affd., 171 App. Div. 906.) Therefore, under this covenant of the lease, the damages which would be recoverable, for the tenant's breach, would be any deficiency that might arise between the amount reserved as rent and additional rent and the amount received from future tenants. When we consider that the lease had twenty-one years to run, the amount of damages at the time of default would not alone be uncertain, but impossible of computation. Thus it well might be that the landlord's actual loss would be less than $7,500, and he would have made an advantageous agreement by having agreed to a fixed sum in liquidation of his damage, or it might be that the tenant's obligation would far exceed $7,500; then the stipulation as to damage would enure to his benefit. Can it be said that $7,500 — less than the rent reserved for a year and a half — is so disproportionate to any possible damage as to justify a holding that the contract was unconscionable? This case is to be distinguished from those where the covenant to pay rent does not survive dispossession. (See *Caesar* v. *Rubinson*, 174 N. Y. 492; *Michaels* v. *Fishel*, 169 id. 381; *Chaude* v. *Shepard*, 122 id. 397; *Feinsot* v. *Burstein*, 161 App. Div. 651; affd., 213 N. Y. 703; *Stimpson* v. *Minsker Realty Co.*,

177 App. Div. 536.) In such cases the eviction of the tenant terminated the lease and all the covenants and agreements therein contained. The damages are fixed and measured by the rent reserved and in any event ascertainable at the time of the default. But where, as in the present case, the covenant to pay the rent and the additional rent, by express stipulation of the parties, survives dispossession of the tenant, the damage cannot be ascertained until the full expiration of the term of the lease. Hence, until that time, it is of necessity uncertain and it is entirely proper for the parties to agree that a sum deposited shall be paid, on default, to the landlord as a sum to be accepted by him in liquidation of all damages that might flow from the breach of the contract. (See *Blumberg* v. *Corday, supra; Halpern* v. *Manhattan Ave. Theatre Corp.*, 173 App. Div. 610; affd., 220 N. Y. 655, and cases *supra*.) As both counsel cite largely from the first opinion in the case of *Stimpson* v. *Minsker Realty Co.* (177 App. Div. 536), it would seem proper to direct their attention to the fact that the decision of the court was not expressed in the entire opinion, but was limited to a reversal on the sole ground that there was no liability of the tenant that survived the termination of the lease by summary proceedings (p. 543).

The defendants sought to show from the conversations and negotiations of the parties at the time and before the lease was made, what liability to damage was apprehended and that the intention of the parties was clearly expressed in the contract and that there was a reasonable apprehension of serious damage. In my opinion, such evidence was unnecessary, as the language used needs no explanation or interpretation. The burden rested on the plaintiff, if upon any one, to show that the expressed language did not correctly represent the engagements of the parties, or to qualify the language used. It was upon plaintiff's objection that the testimony was excluded.

The judgment should be reversed, with costs to the appellants, and the complaint dismissed upon the merits, with costs to the defendants.

DOWLING and SHEARN, JJ., concurred.

SMITH, J. (concurring):

In paragraph 8 of the lease the tenant covenants to remain liable, after he shall have been dispossessed of the property by summary proceedings, for any deficiency that should result upon reletting the premises to the end of the stipulated term of the lease. This covenant is now inserted in many leases and its significance is well understood. If the $7,500 deposited shall be held under paragraph 19 of the lease to be liquidated damages for all breaches of covenants of the lease, this construction in my judgment practically nullifies this covenant to remain liable for deficiency of rent. It may be argued that this covenant to remain liable for a deficiency of rent was necessary in order to establish such damages for breach of the covenants of the lease as would support this $7,500 as liquidated damages. If this sum be liquidated damages as to one party it is as to the other, and I find no warrant for ignoring the specific covenant by the tenant found in paragraph 8 to remain liable for the deficiency, and using that covenant as a mere makeshift to give force to another provision in the contract, providing that this $7,500 should be liquidated damages rather than a penalty. If the landlord had retained the ownership of the property, I think he might have held the tenant liable for that deficiency until the end of the stipulated term, even though in excess of the sum of $7,500. If this be true, to hold this $7,500 as stipulated damages would allow a recovery not only of the deficiency in rent, but of this $7,500 in addition. This clearly was not within the intention of the parties, and, because of that covenant to pay the deficiency in rent which, if fulfilled, would furnish complete indemnity to the landlord for the broken covenants of the lease, I think this $7,500 should not be held to be stipulated damages in this case.

I agree with the conclusion reached by Mr. Justice PAGE, however, upon the ground that damages are proven from the defendants' breach in excess of $7,500. The rent provided for, without the additional rent, amounted to $5,500 a year. This lease was afterwards and on January 28, 1915, modified reducing the rental to $4,000 for three years, $4,500 for one year thereafter and $5,500 for the balance of the term. The proof is to the effect that by the change of

circumstances the property can no longer be used as a moving picture theatre and that the rental value of the property is only $2,500 per year. The termination of the lease provided for is September 30, 1935. The ejectment in summary proceedings was in March, 1917. The deficiency for which the tenant would be liable under the lease would amount upon this basis to upwards of $60,000 for the balance of the term under the lease as modified. If the property had not been sold this action would be prematurely brought, but with a sale of the property without the assignment of the rights under the lease, the relations of the parties have terminated, and it is, I think, a necessary inference that with a prospective deficiency under the terms of the lease of over $60,000, the decrease in rental value must, of necessity, have entered into the price for which the property was sold, so as to have caused damage by reason of the breach of the covenants of the lease largely in excess of the $7,500, the amount of the deposit. The defendants were not allowed to show the value of the property they received in exchange for this property when they transferred it to Stern by a full covenant deed; but a breach of a covenant in a lease to pay $5,500 a year rent for eighteen years where the evidence shows that the property has so depreciated that the rental value is now only $2,500 a year, establishes *prima facie* damage far in excess of $7,500, the amount here in question, and the burden would be upon the tenant to show that by some fortuitous event the property had sold for a sufficient sum to yield an income equivalent to the amount covenanted to be paid as rent. The defendants have, therefore, established their damage in this case without proof of the amount received for the property.

For these reasons I concur in the reversal, and in the dismissal of the complaint.

LAUGHLIN, J., concurred.

Judgment reversed, with costs, and complaint dismissed upon the merits, with costs.